# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| ANGEL AND BELL CORPORATION, | Case No. 10 B 17365 |
| Debtor. | Hon. Bruce W. Black |

### STIPULATION AND FINAL ORDER PURSUANT TO
### 11 U.S.C. §§ 361, 363 AND 364 (I) AUTHORIZING USE OF
### CASH COLLATERAL, AND (II) GRANTING ADEQUATE PROTECTION

This matter comes before this Court on the motion (the "Motion") of Angel & Bell Corporation (the "Debtor") seeking the entry of an order (a) authorizing, pursuant to section 363 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), use of cash and cash equivalents constituting "Cash Collateral" (as that term is defined in section 363(a) of the Bankruptcy Code) in the ordinary course of business and pursuant to the budget attached hereto and incorporated herein as Exhibit A (the "Budget"); (b) providing, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, adequate protection to Mutual of Omaha Bank ("Lender"), as the senior secured lender to the Debtor, with respect to any diminution in the value of the Lender's interest in the Collateral (as that term is defined below) for the use of all Cash Collateral and the use, sale or lease of the Collateral (other than the Cash Collateral) and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; a final hearing having been held before this Court (the "Final Hearing"); due and sufficient notice of the Motion and the Final Hearing under the circumstances having been given; and upon the entire record made at the Final Hearing, and this Court having found good and sufficient cause appearing therefore

CH01DOCS\137172.5

THE DEBTOR AND THE LENDER STIPULATE AND THIS COURT FINDS AND CONCLUDES THAT:

A. On April 19, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor is continuing in possession of its property and operating and managing its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. Lender is the lender and Debtor is the borrower on a loan transaction (the "Senior Loan") documented by that certain Promissory Note dated September 4, 2007 made by the Debtor to First National Bank of Arizona, in the original principal amount of $900,000.00, and endorsed to Lender by Federal Deposit Insurance Corporation, as Receiver for First National Bank of Nevada, as successor to First National Bank of Arizona (as amended, the "Note"); and (2) that certain Promissory Note Modification Agreement dated April 16, 2008 ("Promissory Note Modification Agreement"). The Senior Loan is secured by a first priority lien on the property owned by the Debtor located at 105 Gifford Street, Elgin, Illinois (the "Property"), which is documented by that certain Mortgage and Security Agreement (the "Mortgage"), and that certain Assignment of Rents and Leases (the "Assignment of Rents" and together with the Mortgage, Note, Promissory Note Modification Agreement, and all other agreements and documents evidencing, securing, or otherwise relating to the Senior Loan, the "Senior Loan Documents").

C. Debtor acknowledges and stipulates that:

(i) In accordance with the terms of the Senior Loan Documents, the Debtor is truly and justly indebted to the Lender, without defense, counterclaim or offset of any kind, and that, as of the Petition Date, (i) the Debtor was liable to the Lender in respect of

the Senior Loan in the aggregate principal amount of approximately $900,000 (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities) and (ii) the Debtor was liable to the Lender for accrued and unpaid interest, attorneys' fees, other out-of-pocket expenses, costs and indemnities (collectively, the "Senior Loan Obligations").

(ii)    Under the terms of the Senior Loan Documents and as security for repayment of the Senior Loan Obligations, the Debtor granted to the Lender security interests in, and liens upon the Property and rents and proceeds thereof, as more fully described in the Senior Loan Documents, which are incorporated herein by reference (collectively, including the Cash Collateral existing as of the Petition Date, the "Prepetition Collateral").

(iii)    The Lender's security interests in and liens on the Prepetition Collateral (the "Prepetition Liens") were properly perfected and are valid and enforceable first priority liens on and security interests in the Prepetition Collateral. The Debtor further acknowledges and stipulates that all of the Debtor's cash on the Petition Date constitutes proceeds of the Property and, therefore, constitutes Cash Collateral. The Lender is entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral, including for the use of the Cash Collateral, the use, sale or lease of the Property and the imposition of the automatic stay under section 362 of the Bankruptcy Code.

(iv)    The Debtor is not aware of and hereby waives any claim, counterclaim, setoff or defense of any kind or nature which would in any way (i) affect the validity, enforceability and non-avoidability of the Senior Loan Obligations, the Senior Loan

Documents, or the Prepetition Liens, or (ii) reduce or affect the obligations of the Debtor or any guarantors to pay any of the Senior Loan Obligations.

D. Notice of the Final Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the Lender, (iii) Small Business Administration, (iv) all of the Debtor's remaining secured and unsecured creditors, and (v) all parties requesting notice in this case.

E. A need exists for the Debtor to use Cash Collateral to continue to operate its business and the Debtor has requested authority to do so as specified in the Budget (as defined below) in order to, inter alia, pay wages, generally conduct its business affairs, subject to and within the limits imposed by the mutually agreed upon Budget and the terms and conditions of this Final Order.

F. The Lender has consented to the Debtor's use of Cash Collateral conditioned upon the express terms and conditions set forth in this Final Order.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND, AS APPLICABLE, STIPULATED THAT, EFFECTIVE IMMEDIATELY:**

1. The Motion is granted, pursuant to the terms and conditions set forth in this Final Order and any objections thereto that have not previously been withdrawn are overruled. This Final Order is valid immediately and fully effective upon its entry.

2. This Court has jurisdiction over this Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3. Subject to the terms and conditions of this Final Order, the Debtor may use Cash Collateral and shall pay its ordinary and necessary business expenses for the period from April

29, 2010 through and including July 30, 2010, pursuant to the Budget, which has been consented to by the Lender. The Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a monthly basis, and the Debtor warrants and represents that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in the ordinary course of its business for the period set forth in the Budget. Lender does not consent to and in no event shall the Debtor use any Cash Collateral to pay any items except as set forth in the Budget, or as approved by the Bankruptcy Court after notice to the Lender and a hearing, or as may be consented to in writing by the Lender. Without limiting the generality of the foregoing, the Lender does not consent to and the Debtor shall not use Cash Collateral to (i) investigate, assert, commence, prosecute or otherwise take any action with respect to any claim or alleged claim against the Lender, including but not limited to, claims arising under sections 542 through and including 553 of the Bankruptcy Code; (ii) challenge the amount, validity, priority or enforceability of the Senior Loan Obligations or the security interests and liens of the Lender in the Prepetition Collateral or assert any defense, claim, counterclaim or offset with respect to the Senior Loan Obligations or the security interests and liens of the Lender; (iv) challenge in any manner whatsoever the Senior Loan Obligations and any other rights, claims and entitlements of the Lender under any of the Senior Loan Documents; (v) change, amend or modify in any manner whatsoever any of the Senior Loan Documents; or (vi) seek the modification, amendment or vacature of the Final Order. The Debtor further agrees not to incur any administrative expenses other than set forth in the Budget or any following month's Budget without the prior written consent of the Lender or approval by the Bankruptcy Court after notice to the Lender and a hearing.

4.     Notwithstanding anything to the contrary contained in section 552(a) of the Bankruptcy Code, as security for and as an inducement to the Lender to permit the Debtor's use of the Cash Collateral, the Debtor is authorized to provide adequate protection, in an amount equal to the aggregate diminution in the value of the Cash Collateral from the Petition Date, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, including:

(a)     The Adequate Protection Payments listed in the Budget, which shall be paid to Lender in full commencing the fifth business day following the entry of this Final Order and on the fifth business day of each calendar month thereafter.

(b)     In the event the Debtor in any single month generates cash collateral in excess of 110% of the Budget for that month, the Debtor shall disburse to Lender said excess within 5 business days after the end of said month, said sum to be held by the Bank in escrow and used for the payment of real estate taxes on the Property.

(c)     A valid, perfected and enforceable first-priority security interest (the "Replacement Liens") in all real and personal property of the Debtor, except the Prepetition Collateral, of any description whatsoever, wherever located and whenever arising or acquired, including, without limitation, all accounts, inventory, instruments, investment property, documents, equipment, fixtures, general intangibles, and any and all proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing, and the proceeds of any causes of action and any avoidance actions under Chapter 5 of the Bankruptcy Code (collectively and with the Prepetition Collateral, the "Collateral").

(d)     The Replacement Liens herein granted: (i) are and shall be in addition to the Prepetition Liens and rights of set-off of the Lender existing on the Petition Date; and (ii) are and shall be valid, perfected, enforceable and effective as of the date of the entry of this Final Order without any further action by the Debtor or the Lender and without the necessity of the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, filings with the United States Patent and Trademark Office, mortgages or other documents.

(e)     A superpriority administrative claim under section 507(b) of the Bankruptcy Code (the "507(b) Claim") in an amount equal to the aggregate diminution in the value of the Cash Collateral from the Petition Date.

(f)     The Debtor shall further provide to Lender on the fifth (5th) day of each month the following reports in form and substance reasonably satisfactory to the Lender with respect to the immediately proceeding month (i) a report identifying and differentiating accounts receivable and billings; (ii) a report identifying and differentiating accounts payable and amounts actually paid; and (iii) a report reflecting, on a line-item basis, the actual cash receipts and disbursements for such month, the dollar variance and the

percentage variance of such actual receipts and disbursements from those reflected in the Budget for that month. Any disbursement by the Debtor other than for such expenses set forth in the Budget within the Variance Percent shall constitute an Event of Default under this Final Order unless the Lender consents to such disbursements in writing.

(g) Consistent with section 506(b), the Lender may continue to charge to the account of the Debtor and to pay in accordance with the Senior Loan Documents all fees, expenses and other costs owing as of the Petition Date and which may arise in the normal course of the Debtor's business during the Chapter 11 Case with the Prepetition Liens and the Replacement Liens to secure such fees, expenses and other costs.

(h) The Debtor hereby waives any right to surcharge the Collateral under section 506(c) of the Bankruptcy Code.

5. The Debtor will permit the Lender, the Lender's agents, attorneys and any consultants engaged by the Lender full access to examine the respective corporate, financial and operating records, and, at the Debtor's expense, make copies thereof, inspect the assets, properties, operations and affairs of the Debtor, visit any or all of the offices of the Debtor to discuss such matters with its officers and independent auditors (and the Debtor hereby authorizes such independent auditors to discuss such matters with the Lender, its agents and consultants). The Debtor will cooperate with the Lender, its agents, attorneys, and consultants in all respects, including, without limitation, granting and facilitating access to the real property for the purpose of completing an appraisal.

6. The Lender is not required to advance to the Debtor any amounts that may be available for lending under Senior Loan Documents.

7. The Debtor shall timely perform and complete all actions necessary or appropriate to protect the Collateral against diminution in value, including but not limited to making any and all repairs and capital expenditures necessary to (i) maintain the Property; or (ii) ensure that the Debtor retains any permits, licenses or other approvals necessary to continue to operate its business (collectively, the "Licenses"). The Debtor shall comply with all postpetition obligations under any and all Licenses and all rules and regulations imposed in connection therewith. The

Debtor shall use its best efforts to obtain with respect to existing Licenses, and will obtain with respect to any renewal or extension of an existing Licenses or the entry into any new Licenses, authority to continue or transfer such Licenses in the event that the Lender or its nominee or designee takes title to the Property.

8. Within seven (7) days after the entry of this Final Order, the Debtor shall provide to Lender evidence satisfactory to the Lender that the Collateral is insured for the full replacement value thereof and the Lender is named as loss payee and/or as additional insured on all insurance policies.

9. Notwithstanding anything to the contrary, the Replacement Liens and 507(b) Claim granted to the Lender pursuant to this Final Order shall be subject and subordinate to the amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a). No other carve-outs requested in the Motion are agreed to or approved.

10. Notwithstanding anything to the contrary in this Final Order, the Debtor's authority to use Cash Collateral pursuant to this Final Order shall expire immediately and automatically (the "Termination Date"), upon the earlier of (a) 5:00 p.m. CDT on August 31, 2010, or (b) the occurrence of any of the following events ("Termination Events"): (i) a postpetition occurrence of an Event of Default as defined the Senior Loan Documents; (ii) the conversion of the Chapter 11 Case to a Chapter 7 case or appointment of a trustee or examiner with expanded powers, (iii) the entry of an order granting any other claim superpriority status or a lien equal or superior to the liens granted to the Lender, (iv) the filing by the Debtor of any motion, application, adversary proceeding or plan of reorganization or liquidation seeking to (A) challenge in any manner whatsoever the Senior Loan Obligations and any other rights, claims and entitlements under any of the Senior Loan Documents or under this Final Order, (B) change,

amend or modify in any manner whatsoever any of the Senior Loan Documents, or (C) modify, amend or vacate this Final Order without Lender's express written prior consent; (v) the use of Cash Collateral in excess of amounts permitted under this Final Order, (vi) the entry by this Court or any other court of an order reversing, amending, supplementing, staying, vacating or otherwise modifying the terms of this Final Order; (vii) the entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than Lender with respect to the Collateral (other than relief from the automatic stay in favor of a lessor of, or a secured creditor with a lien against, personal property having a value not exceeding $500); (viii) the occurrence of the effective date or consummation of a plan of reorganization; (ix) the existence of any material postpetition default under any Licenses; (x) the breach of any of the Debtor's obligations under the Final Order; (xi) a sale of the Property pursuant to section 363(b) of the Bankruptcy Code; and (xii) the Debtor's exclusive right to file a plan or solicit acceptances thereof is terminated or modified in favor of any party other than Lender.

11. Upon the Termination Date, the automatic stay pursuant to section 362(a) of the Bankruptcy Code shall be deemed lifted and modified, without further order of this Court, to permit the Lender to exercise any and all of its rights and remedies under the Senior Loan Documents and this Final Order; provided, however, that the obligations and rights of the Lender and Debtor with respect to all transactions which have occurred prior to the Termination Date, including, without limitation, the Lender's security in the Collateral and Debtor's right after notice and a hearing to (i) use Cash Collateral, (ii) reinstate, or defend against the lifting of, the automatic stay, or (iii) contest the existence of a default or Event of Default, shall remain unimpaired and unaffected by any such termination and shall survive such termination; and

provided further that upon such termination the Lender and the Debtor shall be deemed to have retained all of their rights and remedies, including, without limitation, those provided pursuant to the Senior Loan Documents, this Final Order and the Bankruptcy Code, and Debtor's right after notice and a hearing to (i) request the use of Cash Collateral, (ii) seek to reinstate, or defend against the lifting of, the automatic stay, or (iii) contest the existence of a default or Event of Default.

12. The Lender and the Debtor may make non-material modifications or amendments to the Budget or this Final Order, to take effect upon five (5) business days written notice signed by both parties without further order of this Court, and all actions taken pursuant to such modified Budget shall be and hereby are expressly authorized hereunder. The Lender may consent in writing to extend the Termination Date without a further hearing or order of this Court. If the Lender determines to do so, written notification of such extension shall be provided to all parties in-interest.

13. In consenting to a Budget and by taking any other actions pursuant to this Final Order, or in exercising the rights and remedies as and when permitted pursuant to this Final Order or the Senior Loan Documents, the Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operations or management of the Debtor.

14. In consideration for the continued use of Cash Collateral, the Debtor on behalf of itself and its successors and assigns (the "Releasors"), shall forever release, discharge and acquit the Lender and its officers, directors, employees, agents, attorneys and predecessors in interest (the "Releasees") of and from any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type,

including, without limitation, any so-called "lender liability" claims or defenses, which arose on or prior to the date this Final Order is entered with respect to the Debtor, the Senior Loan Obligations, the Collateral, or the Senior Loan Documents.

15. The findings contained in recital paragraphs of this Final Order shall be binding upon all parties in interest, including, without limitation, the Debtor and any statutory committee appointed in this Chapter 11 Case, unless a party in interest (including any statutory committee appointed in this Chapter 11 Case) has timely filed an adversary proceeding (subject to the limitations in paragraph 14 above) challenging the amount, validity, enforceability, perfection or priority of the Senior Loan Obligations or the Prepetition Liens, or otherwise asserting any claims or causes of action against the Lender relating to the Senior Loan Obligations on behalf of the Debtor's estate, no later than the date that is sixty (60) days after the entry of this Final Order, and the Court enters a final, non-appealable judgment in favor of the plaintiff in any such timely filed adversary proceeding. If no such adversary proceeding or contested matter is properly commenced as of such date, the Senior Loan Obligations shall constitute an allowed fully secured claim, not subject to subordination or otherwise unavoidable, unless determined otherwise by applicable law. Subject only to the rights set forth in this paragraph, for all purposes in this Chapter 11 Case, and any subsequent Chapter 7 case, the Prepetition Liens shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and the Prepetition Liens shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, any successor thereto, unless applicable law dictates otherwise. If any such adversary proceeding is properly commenced as of such date, the findings contained in the recital paragraphs of this Final Order shall nonetheless remain binding

on all parties in interest except to the extent that such findings were express challenged in such adversary proceeding.

16. Nothing in this Final Order shall prejudice the Lender's rights under the Bankruptcy Code and applicable non-bankruptcy law, including, without limitation, the Lender's rights to (i) seek further adequate protection, (ii) request conversion or dismissal of the Chapter 11 Case; (iii) seek relief from the automatic stay under section 362(d) of the Bankruptcy Code; (iii) request appointment of a trustee or examiner in the Chapter 11 Case; (iv) propose or solicit acceptances of a plan of reorganization or liquidation; (v) object to or otherwise oppose any relief sought by any entity or party in the Chapter 11 Case, including without limitation, to object to any application filed by any professional in the Chapter 11 Case seeking compensation and reimbursement of expenses under sections 330 or 331 of the Bankruptcy Code; or (vi) assert that the Debtor is obligated to pay the Lender the default rate of interest and any other charges, penalties and costs, including attorneys' fees and expenses, required to be paid under the Senior Loan Documents for the period commencing on the Petition Date and continuing until all such amounts due to the Lender under the Senior Loan Documents and hereunder are paid in full. This Final Order and the transactions contemplated hereby shall be without prejudice to any and all rights, remedies, claims and causes of action which the Lender has or may have against any party who may be liable with the Debtor for the Senior Loan Obligations and otherwise under the Senior Loan Documents or any part thereof. The execution of this Final Order, and nothing contained therein, shall be deemed to be an admission, or constitute evidence, in connection with any matter or proceeding other than the enforcement of the terms of this Final Order, including but not limited to (i) any subsequent motion or application for use of Cash Collateral or for approval of debtor in possession financing; and (ii) any motion or application filed by or on

behalf of the Lender seeking to modify the automatic stay, dismissal of the Chapter 11 Case or termination of exclusivity. Except as otherwise expressly provided in the Final Order, the parties hereto expressly reserve all of their rights and remedies under the Bankruptcy Code and applicable non-bankruptcy law.

17. The Debtor waives any right to seek any modifications or extensions of this Final Order without the prior written consent of Lender.

18. The provisions of this Final Order shall be deemed to have been jointly drafted by the Debtor and Lender and shall not be construed against a party because of its role in drafting this Final Order.

19. This Final Order may be executed in one or more counterparts, all of which shall be deemed to be a single original.

20. In the event that any of the Chapter 11 Case is dismissed, neither the entry of this Final Order nor the dismissal of the Chapter 11 Case shall affect the rights of the Lender or the Debtor under this Final Order, and all the rights and remedies of the Lender hereunder or at law or in equity shall remain in full force and effect as if the Chapter 11 had not been filed.

ENTER:

*Bruce W. Black*

_____
Bankruptcy Judge

5/27/2010

Order prepared by:

Thomas W. Drexler (ARDC No. 3121682)
Attorney at Law
Suite 1910
Chicago, IL 60602
(312) 726-7335

ANGEL & BELL CORPORATION

_____
By One of Its Attorneys
Thomas W. Drexler (ARDC No. 3121682)
Attorney at Law
Suite 1910
Chicago, IL  60602
(312) 726-7335

MUTUAL OF OMAHA BANK

_____
By One of Its Attorneys
Leslie Allen Bayles (ARDC No. 06271855)
Bryan Cave LLP
161 North Clark St., Ste 4300
Chicago, IL  60601
(312) 602-5000